EASTERN DIST.

*March*, 1840.

MEYERS ET AL.

*vs.*

GUESNARD.

---

MEYERS ET AL. *vs.* GUESNARD.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

Where the *presumptions*, arising from the whole evidence, which leaves the case doubtful, preponderate in favor of the defendant, and the district judge, who tried the case, gives judgment in his favor, it will not be disturbed.

EASTERN DIST.
*March*, 1840.
═══════════
MEYERS ET AL.
*vs.*
GUESNARD.

So, where a vessel was apparently abandoned by the surviving partner, and taken into possession by the original owner, who paid the charges on her, and held the notes of the purchasers for half the price, but had offered to rescind the sale, and the question of acceding to this offer left doubtful : *Held*, that after the lapse of ten months, the purchaser will not be allowed to recover her back.

This is an action by the surviving part owner of a schooner, called the " *Pomona*," who sues in his own behalf, and as curator of the estate of one William Facundus, deceased, the other partner, to recover said vessel from the defendant.

The plaintiff alleges, that they had purchased this schooner from the defendant, in October, 1835, for twelve hundred dollars, and that they continued to navigate her, and trade to New-Orleans, until January, 1837, when Facundus, who was in command, died ; that they had paid one-half of the purchase money previous to his death, and since then, the defendant has taken possession of said vessel without any right or authority, and claims to be owner. He alleges, that when the defendant took said vessel, she was engaged in a very profitable trade. He prays that she be delivered up to him, and the defendant condemned to pay three hundred and fifty dollars per month for the use of her, &c.

The defendant denies any liability ; admits the sale, price, and payment of one-half the price, by the plaintiff, but denies that Facundus was interested in the purchase. He avers, that the plaintiff was unable to make the last payment, and proposed to retrocede the vessel for the balance due, the defendant paying some charges and debts, to which he reluctantly agreed, as the vessel was in very bad condition. He denies that the plaintiff ever offered to pay the balance due, for which he is now willing to return the vessel, and on being reimbursed the sums he has paid for and on account of her, amounting to one hundred and forty-five dollars.

There was a mass of testimony taken and offered, under the issue made up, but which went principally to an apparent abandonment of the vessel by the plaintiff, and also to show there had been an agreement to rescind the sale, and retrocede the vessel on the return of the plaintiff's notes, &c.

EASTERN DIST. The evidence was various, and established nothing definitely
March, 1840. which is not admitted in the pleadings.

MEYERS ET AL.          The district judge concluded, ·that the plaintiff had, in
vs.          fact, abandoned the vessel before the defendant took her,
GUESNARD.
and had shown no right to recover.   There was judgment
for the defendant, and the plaintiff appealed.   ׀

*Hoffman,* for the plaintiff, insisted that there was no legal
evidence of the offer to retrocede the vessel for the balance
due on her, being only sworn to by one witness, which was
not sufficient ; that the whole testimony preponderated to
the side of the plaintiff, and entitled him to recover.

*Roselius,* contra.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff, in his own right, and as curator of the
succession of his former partner, alleges, that in 1835, they
purchased of the defendant a schooner, called the " *Pomona,*"
for twelve hundred dollars, on certain terms of credit, and
that they continued to navigate the same in the coasting
trade, until some time in January, 1837, when his partner,
Facundus, died, at which time one-half of the price had been
paid; that the defendant, at that time, without right or
authority, took possession of the schooner, and claims to be
the owner of her, and has refused to deliver her, notwith-
standing his tender to pay the balance due of the purchase
money.   He prays that the defendant may be condemned to
restore the schooner, or to pay her value, together with
damages, for the use and detention of the same.

The defendant admits that he sold the schooner to the
plaintiff, but not to him and Facundus, as alleged ; and that
two of the notes given for the price, remain in his possession,
unpaid.   He alleges, that the plaintiff afterwards agreed to
retrocede to him the said schooner, in discharge of the last
notes, amounting to six hundred dollars together ; one
hundred and forty-five dollars and seventy-eight cents,
which he had paid on account of the vessel.   He denies
that the plaintiff ever offered to pay him the balance of the

price, and he offers again, in his answer, to give up the schooner, on the payment of six hundred dollars, together with the amount due for advances.

It is not clearly shown, whether Meyers alone, or Meyers and Facundus, made the purchase, although it appears that she was navigated for their joint account, and commanded by Facundus up to the time of his death. The production of the notes yet remaining in the hands of the defendant, would probably have shown who was the real owner. It is for Meyers to prove that the schooner belonged to the firm by purchase. It is certainly proved, that on the death of Facundus, the schooner remained a considerable time abandoned in the basin ; that the defendant took charge of her, without any pretension as owner, but rather as *negotiorum gestor.* One witness testifies, positively, that the captain of the port came to the defendant, while the schooner was in a state of abandonment, and inquired what was to be done with her, and the defendant replied, that she did not belong to him. He further states, that some time afterwards, Meyers came to the defendant, Guesnard, and asked him to take the schooner back for what he owed, as he had no money to pay his notes. Guesnard told him to sign an act of abandonment, and he would do so. Meyers said he would. The act was drawn up, but plaintiff went away, and never signed it. The witness further states, that about ten months afterwards, the plaintiff came to Guesnard, and asked him to give back the schooner. The latter reminded him that he had abandoned her to him. A dicussion then arose between them, and Guesnard asked him why he put it off so long—why he did not come before, and claim the vessel ?

The District Court concluded, from this evidence, that the defendant had made good his defence, and gave judgment against the plaintiff, who thereupon appealed. His counsel has insisted strenuously, that the statement of this single witness is not corroborated by any circumstances, and is consequently insufficient under article 2257, of the Louisiana

MEYERS ET AL.
*vs.*
GUESNARD.

Code, which requires, in cases of this kind, "at least one credible witness, and other corroborating circumstances."

It is clear, that at first, after the death of Facundus, the defendant disclaimed any title to the schooner; that a guardian was appointed by the captain of the port; that afterwards, Guesnard paid the fees of the guardian, and other charges on the vessel, instead of suing for the balance due him, and that about ten months elapsed before the second demand was made, and that, in the mean time, Guesnard was in possession, the reputed owner. Nearly a year had elapsed before the institution of this suit. Most of these circumstances are entirely consistent with the testimony of the witness, who swears to the retrocession; and the conduct of both parties seems to us to confirm the statement of the witness. If Guesnard intended wrongfully to take justice into his own hands, and convert the schooner to his own use, without the consent of the plaintiff, why did he not do so at first? Why did he pay the charges on the vessel? And, especially, why did the plaintiff so long desist from setting up a claim, when he knew that the defendant was in possession of the schooner? On the other hand, it may be said, that the circumstance of Meyer's leaving his notes in the hands of Guesnard, is inconsistent with the hypothesis of a rescission of the sale; that he would naturally have withdrawn them. Such a presumption may be fairly said to be counterbalanced by the fact, that the holder of the notes neither put them in circulation, nor attempted to coerce their payment.

Upon the whole, we conclude, that although the case remains somewhat doubtful, yet the preponderance appears to be in favor of the defendant, and as the District Court pronounced in his favor, we do not feel authorized to reverse the judgment.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.